The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, please be seated. Ms. Lopez, we're happy to hear you in Manning v. United States. May it please the Court, Carolyn Lopez on behalf of the government. This is a case about the fact that the district court first excluded the government's relevant expert testimony on the grounds that it was cumulative and then later faulted the government for not putting on enough evidence after discounting the one expert it had allowed. More specifically, the case is about whether Dr. Urban's referral to an interventional radiologist to treat plaintiff's initial hemorrhage with uterine arterial embolization caused plaintiff's second hemorrhage hours later, which unfortunately resulted in a hysterectomy. Dr. Duzak, who would have been the only interventional radiologist expert in the entire case, who had personal experience with this, was well versed in the current medical literature. He would have testified first that not only is a uterine arterial embolization generally an appropriate procedure in these circumstances, but also specifically that this particular embolization, based on the angiogram that he was the only person competent to testify to, actually stops the bleeding in the morning. And because it stops the bleeding in the morning, plaintiff's theory that the bleeding in the morning caused the subsequent bleeding later in the afternoon couldn't possibly be true. And there was simply no reason to exclude the evidence from the only interventional radiologist expert in this case's cumulative, just because the government had an obstetrics expert. Well, your first hurdle, I guess, is to demonstrate that there was an abuse of discretion in excluding the first expert's testimony, right? Pretty high standard. That's correct. So how is this an abuse of discretion? What's maybe your best case closest to this in finding an abuse of discretion? The United States v. Bereal makes clear that this court, on review, when it looks to the exclusion of relevant evidence, it will maximize the probative value of that evidence and minimize the prejudicial value. And here, certainly under that standard, there was an abuse of discretion. If I could just talk briefly about what new evidence Dr. Dusak would have introduced and how that would have potentially shaped the case. I'm not sure you understand my question. Maybe I have the doctors mixed up. But it seems to me that the first thing you have to do is to say that saying that the first doctor's testimony, the one that did get in, was explained to us why the district court was incorrect in its assessment of that testimony. So I'm glad that you asked that. I want to clarify that we're not challenging that particular portion of his ruling. Well, if that is the case, then I don't know where you go from there. So this case highlights why the standard under Rule 403 is whether the probative value of the proffered evidence will be substantially outweighed by the fact that it's needlessly cumulative. And here, the reason that the government wanted to introduce two experts who came at it from a different perspective. So the Johnson case from the 11th Circuit, which of course is not binding here, but it is instructive. So this second expert, it's not as if we asked to introduce 100 experts and this was the exclusion of the 100th. This is the only interventional radiologist in the case. He's the only person who has the personal experience performing this particular procedure and knowing from his perspective and both consulting on whether it should be done and actually performing it all of the contexts in which it's appropriate. And so for standard of care, that would go directly to impeach plaintiff's theory. So what happens here is that if there are two rules of the federal rules of evidence that we've deferred to district courts on, it would be rule 401 and 403 and the number of 403 reversals are few and far between. And there's a danger here of setting up some kind of riptide. You hand down one of these cases holding that it's a 403 abuse of discretion and every case imaginable comes up from the trial courts over every evidentiary ruling or at least every evidentiary exclusion. And this case is thrown up to us. So you have to weigh what the consequences of a riptide ruling are down the road. And it really will open up a bundle of 403 appeals lead to a reworking of the relationship between trial courts and appellate judges. I mean, maybe we wouldn't have made the same ruling. I can see why you have reservations about it. But at the same time, abuse of discretion indicates that even if we wouldn't have made the same ruling, it might still not rise to the level of abuse. We don't think that this would cause a riptide change here because of the nature of the inquiry and the facts of this case. So here, we both think that it does rise to the standard of when you look at the evidence that he would have brought in, he would have relied on different evidence. So, for example, in causation, one of the other questions that gets asked is whether it violated the substantial. I can see this being thrown up at us in every case, every district court ruling of a 401 or 403 exclusion. I think here, the limitations within the bounds of this case, which is that it was an expert who was coming from a different but relevant field. He would have been the only person qualified to testify to key evidence that didn't come in because he wasn't able to actually testify to it. So on causation, he would have been the only expert qualified to, and in fact, the only expert who had reviewed what's called an angiogram, which is a film of the actual procedure that was done. And his testimony about what that angiogram showed went directly to rebutting plaintiff's theory of causation. And in fact- Well, why didn't you introduce him as your expert then? We tried to introduce him- I understand, your first expert. Because we now know your second expert, the district court didn't find persuasive. You spent a lot of time talking about how important the second expert was. He was so important. And you think he makes your case. Why wasn't he number one off the bat? The case was, this is a medical malpractice case against an obstetrician. We do read the briefs, you know. We know that. Right. So, I mean, the standard under Rule 403 isn't that the government's, or that the defense's second expert should be excluded because the district court has allowed in one expert. Actually, I do know that too. But it seemed to me that you're making the argument that the second expert was crucial to your case. And was the first expert also crucial to your case? Apparently not. Because you're ready to say now that the discarding of his testimony was not an abuse of discretion. I think what might be helpful is to sort of talk about the way the government theorized the case. And sort of, I think that helps to go to explain why we tried to introduce the experts in the order that we did. And I am interested in that. But I am also interested in how you can make the argument, well, our number one man wasn't, that's okay to exclude his testimony. But then you should let our number two man in. But we didn't put him first. So I think this, in part, I wasn't a trial attorney here. But it's your case now. I've been in this very courtroom where Judge Wiener, I heard Judge Wiener say to someone, well, it's your case now. Yeah, no, that's right. So I can speak from my understanding of the way the government's theory developed. Which is that both an obstetrician, who's the person who makes the initial referral, so that's sort of the first point in time. The decision to make a referral to an interventional radiologist. So it would make sense to put on an obstetrics witness first. And then the question is, was that uterine arterial embolization that was the procedure that was referred to, did that work? And at that point, it does make sense. Then you talk to the second person in sort of the chronological stage of what would have happened in that case. And that second person, who would have been competent to testify to that, is an interventional radiologist expert. So sort of chronologically, in plaintiff's theory, it does make sense to have the obstetrics expert, who sort of talks about, as an obstetrician, these are the things that go through my mind when I'm deciding whether or not to make a referral. And then you have the interventional radiologist who can come in and say, yes, if there had been a referral to me, I would have thought this was appropriate. Wasn't the heart of the negligence claim that Dr. Urban, who was the referring physician, failed to consult with a radiologist on whether the embolization procedure was appropriate for the plaintiff? I mean, it was a, I thought, the reason I was thinking that the district court might have been thinking was, were you, maybe you could put the radiologist on and he could talk about what embolization procedures were, when they were appropriate, when they weren't, and how they generally, and he was the only one that had first-class experience with them and first-hand experience, I understand. But I thought the crux of the negligence claim was that Dr. Urban didn't talk to any embolization expert or radiologist before referring the plaintiff for this kind of surgery. So I just want to make two quick points in response to that. The first is that the whether or not she consulted with a radiologist in making the referral was only part of the district court's analysis as to standard of care but not causation. And since plaintiffs need to prevail on both standard of care and causation, that doesn't apply to causation. Again, causation, Dr. Duszak was the only person. It would apply to the standard of care. And the reason that we argue in our brief that it doesn't apply to the standard of care is because when you're talking about the standard of care more generally, it's about the practice in the field more generally, not the particular mechanics of whether in that particular instance she had a fulsome colloquy with a radiologist or a more perfunctory one. And all Dr. Duszak would have been coming in to testify to is, look, plaintiff's expert says these embolizations are never, they're only appropriate for what's called a tonic uterus but not for bleeding from a laceration. And that's something that the district court adopted in its findings. Now, what Dr. Duszak would have added that, you know, we can't say for sure, and we're not asking this court to prejudge how the district court is going to come out when it has the relevant evidence in front of it. But what Dr. Duszak would have said is, no, no, based in my personal experience performing these, consulting with, in my personal experience, consulting with obstetricians on it, it's actually appropriate even if there's no a tonic uterus and the bleeding is solely from a laceration. And so that would have been probative there. Sort of a general statement. I mean, isn't every patient unique? And you'd want to talk to a radiologist about the unique characteristics of the individual who is being referred? That might be true, but my understanding of plaintiff's theory of causation, theory of breach of standard of care was that, and this is on page 11 of plaintiff's response brief, that a urinary arterial embolization can never be a correct procedure to address bleeding from lacerations. And so their theory of the breach of the standard of care doesn't actually turn on whether or not there was, in fact, a fulsome colloquy or not. All right. Well, you have some rebuttal time. We'll be pleased to hear from you then. I'll be asking one question. Of course. You don't take the position that the rules of evidence change because it's a foreclaims case, do you? No, that the same rule, 403. But the judge is the judge, and the judge is the jury, too. And everything that you're complaining about is reviewed for abuse of discretion. That's right. Isn't that correct? That's right. And that includes the fact that the judge changed his mind. He went one way, and then he went, a few months later, he went back against the government. That's also reviewed for abuse of discretion. You're not complaining about that, are you? We're not. What we are complaining about is that the fact that the district court changed its mind on causation and also acknowledged in changing its mind that it was a close question indicates that the government was substantially prejudiced. And this goes to Judge Wilkinson's question as well about sort of opening the floodgates. And because it's not just did the district court make an incorrect decision that was an abuse of discretion, it also was the defendant or the plaintiff prejudiced. And here, this evidence is especially where the district court acknowledges that it was a close question and essentially what happens to the district court. Judges make decisions on close questions. They're obliged to do that. And he's obligated to exercise his discretion, and he did so. You're saying that you have to say he abused it, and that's the only argument you got? Yes, that's right. We're saying that he abused it, and then that's... And the rules are the same. And we are not arguing for special rule in tort cases. Good morning. May it please the Court, Jonathan Goldberg for Ms. Manning. Mr. Goldberg, were you trial counsel? I was, Your Honor. Okay, so you're going to be a help to me here. How long was the trial? Four days. Four days. And was there argument about whether this witness, this second expert, was or was not cumulative? Yes, Your Honor, there was extensive argument about that. And you maintain that the expert was cumulative? Yes, Your Honor. So after the judge, when did the judge's original decision come out? I believe, if I recall correctly, Your Honor, on the last day of the trial was when Dr. Duzak was scheduled to testify, and there was argument prior to his testimony regarding that. We had also filed a motion in limine prior to trial to exclude Dr. Duzak, which had been argued. I understand the question you're answering, and I was unclear. When did the judge's decision of his verdict, if you will, come out? Regarding Dr. Duzak? Regarding your losing, the original one. Sure, Your Honor. If I recall correctly, about 10 days after we finished the trial. Okay. And was there a written opinion? Yes, Your Honor. Okay. And then what happens after that? After that, Your Honor, we filed a motion under Rule 59, I believe it is, asking the court to reconsider and pointed out the testimony of our expert, Dr. Luciani, the defense expert, Dr. Tucker, and addressed the point that the court raised as far as whether or not surgery in the morning would have avoided the hysterectomy that occurred in the afternoon. Right. And also as to the cause of the uterine atony that the plaintiff say, and I think that the treaters will admit, was present in the afternoon. What caused that? Our expert, Dr. Luciani, testified that it was because there was ongoing bleeding from the morning, which caused the hematoma, which prevented the uterus from contracting, which causes this atony, which led to the hysterectomy. Dr. Tucker, the expert who did testify for the government, testified that there was atony there. He didn't know what caused it. And looking back at Dr. Duzak's testimony from his deposition, he testified that he didn't even know what was causing the bleeding in the afternoon. So was the force of your, you say there wasn't sufficient evidence, and then the government, did they respond and say, well, we have this other expert? This is in your Rule 59 motion. Was there a response to it? Yes. There was a response, Your Honor, and standing here right now, I cannot recall specifically what the government's opposition was to that. I don't believe it had to do with the fact that Dr. Duzak did not testify. I believe they were relying on what Dr. Tucker, their expert who did testify, said. Okay. So then was there another, was there an argument then after that? No, Your Honor. The court issued its ruling without argument. How would the testimony be cumulative when Dr. Duzak was the only witness that had actually ground level, had actually performed embolization procedures or was really closely familiar with the way that they were formed? I mean, I thought Dr. Tucker was an obstetrician, and that he was dealing with the obstetrics end of it, but the obstetrics end of it and the radiological end of it are two different things, and you can't, it's hard to say whether someone has breached the standard of care and referring unless you have a good idea of referring to what, and that was what Dr. Duzak was going to supply. A referral decision has two components to it. Number one, the characteristics of the patient before the physician, and number two, the characteristics of the physician and the procedure to which the patient is being referred. And so you can make the argument that this isn't cumulative at all, it's just supplying the second half of any referral decision. Well, Your Honor, I think that initially we need to have kind of a line of demarcation between standard of care and causation because, as the court knows, these are two separate concepts. As far as standard of care, if I can address that briefly, Dr. Duzak testified that he doesn't know the standard of care for an obstetrician-gynecologist, which was Dr. Urban. She was the one who was at issue in the case. That's the answer that you sort of have propounded before, but Judge Wilkinson has put his finger on exactly my problem, and you're not really addressing that problem,  Yes, Your Honor. Well, what I would say, Your Honor, is that Dr. Tucker, who is an obstetrician, he testified regarding the procedure that was done, why he thought it was appropriate, and why he believed that it was successful. Dr. Tucker talked about the fact that he talked about what the imaging studies showed, that's the angiogram. He talked about the embolization procedure that was done. He then talked about the fact that he believed that the procedure was successful and it stopped the area of bleeding where the angiogram or where the embolization was focused. The procedure was performed. It's not a question about whether it was performed or not. It was performed. Dr. Duzak's testimony would have only said the exact same thing. All of that mirrors the report that was in evidence at trial. The plaintiff, Ms. Manning, did not disagree with any of the findings on the angiogram or in the procedures performed by the interventional radiologist, Dr. Riccio. We have no argument that the angiogram shows what Dr. Riccio's report said it showed, and furthermore, what Dr. Tucker said that it showed. We don't take issue with that. Maybe I haven't understood your argument. Is your argument that Dr. – because you keep using the doctor's names and you're more familiar with who's doing what. Is your argument that Dr. Duzak did not offer any better testimony than the person that testified at trial? Is that what you're saying? Yes, Your Honor. It's part of what I'm saying. So if we should conclude from his deposition that he would have offered better testimony, would have met this thing so it wouldn't have been cumulative, we should reverse? No, Your Honor. Well, then I don't understand how that can be your argument then. I'm sorry, Your Honor. Your argument can't be, I don't think, that he was – we could tell by looking at him that he was cumulative. I thought that's what your argument was to us right now. Yes, Your Honor. That he was saying exactly the same thing as the first victim. He's saying – he's testifying regarding the same subject matter. Well, of course there's only one trial, right? Agreed. The same issues regarding the embolization and the same findings regarding the result of the embolization. The plaintiff's argument at trial was that there was a different area of bleeding that needed to be addressed and could only be addressed by taking the patient to surgery, and that's where Dr. Urban breached the standard of care by not taking the patient to surgery. Had she done so, the surgery would have repaired that area of bleeding, and Ms. Manning would not have gone on to require a hysterectomy. When you circle back to Dr. Duszak, in addition to what he said regarding the embolization procedure, which is consistent with what Dr. Tucker said, Dr. Duszak also said – and this is really the point, this is the crux of the causation argument in this case – Dr. Duszak said, I don't know whether surgery in the morning would have prevented the hysterectomy. That's the causation issue in this case. Our expert, Dr. Luciani, testified it would have avoided the hysterectomy. Dr. Tucker, who is the government's OBGYN expert, testified he thought that she still would have required the hysterectomy. So that issue, there is engagement on that issue. Dr. Duszak adds nothing to that issue, which is really what the causation is in this case. There may be an engagement on the issue of causation, but what I'm talking about is the issue of the breach of the standard of care in the referral. And the only question I keep coming back to is, Duszak is the only radiologist that was going to be testifying. The rest of the folks were obstetricians. And he's the only one, I guess, that has actually performed these procedures and live testimony, more so than a report, would give a sense of when they're successful, when they're not, what the pros are, what the cons are, and give you a sense of medical judgment,  Wouldn't Duszak's testimony have contributed to an understanding and an appraisal of the balance that had to be struck in a referral decision? No, and here's the reason why. Two things. First of all, the government uses the word referral throughout their briefs and their arguments, as if the patient was referred to the interventional radiologist for the interventional radiologist to decide what to do. That isn't what happened. Those weren't the facts of this case. The facts of this case was that Dr. Urban made the decision on her own to send this patient to have this procedure done. Dr. Urban testified for several hours at trial, and then the court allowed the government to recall her to try to elicit testimony that there was some sort of discussion with the interventional radiologist about whether or not to actually do this procedure. That testimony did not come out. This was a decision made exclusively by Dr. Urban, and, therefore, the standard of care analysis is for an obstetrician-gynecologist. What did the standard of care require? Dr. Duszak admitted he's not an expert in OBGYN. Just come right down to it. Where was the standard of care breached? What precisely was the breach of the standard of care? Was it the failure to consult with a radiologist or someone who is familiar with an embolization procedure, or was it a failure to consult, or was it just a basic medical misjudgment, or what? The negligence in this case, the allegation was that Dr. Urban was negligent because she did not take Ms. Manning to surgery in the morning after she delivered her child. The standard of care required that she be taken to surgery to address her bleeding, and that it was a breach of the standard of care to send her for an embolization procedure. So that was the breach of the standard of care that was alleged at trial. That's what Dr. Luciani, our expert witness, testified to at trial. Dr. Tucker, the government's expert OBGYN, he testified to that at trial. Dr. Duszak admitted in his deposition testimony that he does not know what the standard of care for an OBGYN is. Did he know about the surgical procedure that Dr. Urban failed to prescribe? Did Dr. Duszak know about that procedure? Yes. Do you know about the procedure, Your Honor? I believe that he's not a surgeon. He wouldn't be doing that procedure. That's a procedure only for OBGYNs who are surgeons. He's an interventional radiologist. He would never do that procedure on a patient. So he would not have the experience, and as we pointed out in our brief, there's no way he could be qualified in this case. Putting aside the fact he says that he's not going to be offering standard of care testimony regarding Dr. Urban, he would never be able to be qualified in this case as an expert in OBGYN to talk about standard of care regarding Dr. Urban. I don't know. Sometimes non-surgeons in the medical profession know quite a bit about surgery. Some do, some don't. In this case, Your Honor, if we look at the facts of this case and we look at the testimony in this case from Dr. Duszak, and by his own testimony that he doesn't hold himself out as an OBGYN, he doesn't hold himself out as an expert in OBGYN, and he's not going to be commenting upon the standard of care for an OBGYN, I don't see how in this case he'd be entitled to do that. How close to a per se rule are you arguing? Are you arguing that this sort of bleeding, that embolization is never appropriate? It depends on what is causing the bleeding. If the bleeding is due to a laceration in the uterus, which Dr. Urban admitted she caused during the procedure and that was the most likely source of the bleeding, then, yes, you take the patient back for surgery if it's a different circumstance and you have to evaluate it under those circumstances. Yes, but that's not an answer to the judge's question. Well, I don't know that you can make a per se rule because every case has to be judged on its own merits. So you're not arguing that it's never appropriate? I'm arguing in this case it's not appropriate. I can't talk about any other cases. And, again, the standard that this Court has to use is an abuse of discretion by Judge Russell in excluding Dr. Duzak's testimony. And as the Court has pointed out, this is a very, very broad level of discretion that Judge Russell is entitled to. Did you find, you researched this case, you researched it in district court, you researched it here, did you find any case in which a district court had granted judgment for one side in October and, what, six months, nine months later, granted judgment for the other side, relying on the fact that evidence that he'd excluded as cumulative was not in the case? Well, the answer to your question, Your Honor, is no. However, I don't believe that is what the Court is saying down below as to why it granted our motion and found in our favor. It had nothing to do with the excluded evidence. What it had to do with – Well, because the evidence had been excluded. No, but – Well – I'm sorry. Let me just back up a minute. Have you found any – let's leave aside the cause. Have you found another case in which a district court has done this, issued a judgment and six months later did it in on an evidentiary issue? Specifically that, Your Honor, no. No. But if I can address Your Honor's position or your question regarding Judge Russell looking or saying the fact that he changed his mind because the excluded evidence wasn't before him. So even though the evidence was formally excluded, this is a bench trial, and is it possible that the district judge would have the sort of somewhat odd circumstance where a district court excludes testimony but he's pretty darn familiar with it? He's pretty familiar with the very thing he excluded, and that would not matter at all in a jury trial. But in a bench trial where a judge excludes evidence formally but is familiar with its contents either through a proffer or a document or some other way, does that figure into what we would do in the sense that if we remanded it and said let the evidence in, we'd be letting in something that he already knows about and it's not going to change his mind a second time? Absolutely, Your Honor. And I think that's, I'm not surprised at that answer, but is there evidence that he was familiar with this? I thought that there was a lot of argument about it being cumulative and there's deposition testimony, but I didn't know that there had been an extensive proffer. But you tell me if there was. There was a proffer made by the government. And it was an extensive proffer, so he knew that we were going to talk about this evidence. That's even so, he issued his subsequent opinion. That's your representation. Yes, Your Honor. There was a proffer made by the government. Whether it was extensive or not, I'll leave to others to decide. No, no, no. But it reaches this issue that now seems so critical. The proffer was what Dr. Duzak would testify to at trial if he was called. In addition to that, as I mentioned, there was a motion to eliminate filed before trial. It's sort of funny. In these bench trials, we have these occasional phenomenon of excluded, non-excluded evidence. I mean, it's all right. But there it is. As a practical matter, judges in bench trials probably, or at least some of them, do apply this rule of evidence a little bit loosely. And they'll let stuff in. Yeah, I would think it would be more likely that he'd let it in. They'd more likely let it in and let that go to the weight than they would if it was a jury sitting there. But the fact that they did or didn't is still a discretionary matter. I mean, the question is whether we'd be second-guessing them if we were. Your Honor, I believe that's correct. But I suspect that there are a lot of bench trials where stuff comes in before the judge. In these tort claim cases, it might not be heard by the jury. But I don't know that the rules certainly don't contemplate that or deal with it in the way the judge wants to do things. That's correct, Your Honor. And as we've been talking about this morning, there's wide discretion with the court. But to get to Judge Wilkinson's point, yes, Judge Russell had before him everything that Dr. Duzak was going to testify to at trial. So as a practical matter, he heard it and then made the decision that it was cumulative, which it was, and that it was for senator care that he testified, Dr. Duzak had testified, that he was not going to be giving senator care testimony regarding Dr. Urban, who was the only alleged negligent actor in the case. We didn't allege that the interventional radiologist who did the procedure was negligent. It was Dr. Urban, the OBGYN. So therefore, based upon Dr. Duzak's own words, he's not here to talk about senator care for Dr. Urban. And the fact that he's not qualified to give an opinion regarding Dr. Urban, he was properly excluded on senator care and on causation. As I mentioned, he could not address the pivotal causation issue in the case. Would surgery in the morning have avoided the hysterectomy? And any testimony he would give about the findings or the showing on the angiogram and the embolization was already covered by Dr. Tucker. There was no issue regarding how the angiogram was performed. The issue was whether it was the right procedure to perform, and it wasn't. Dr. Luciani testified to that. Dr. Tucker, the government's OBGYN expert, said it was. Dr. Duzak's not there to talk about senator care for an OBGYN. All right. Thank you, Counsel. Thank you, Your Honors. I just wanted to clarify a couple of the points that came up in the last colloquy. The first is that on the causation issue, in fact, none of the other expert witnesses reviewed or testified about the actual angiogram, and that's because only an interventional radiologist is qualified to competently discuss. An angiogram is essentially a film. I didn't know what an angiogram was before I started this case. It's essentially a film that shows you what was happening and what the angiogram would have shown here, which even if Dr. Duzak couldn't have said, look, in a hypothetical different world, I don't know what would have happened in surgery. But what I can tell you is that plaintiff's theory of causation, which again is that the bleeding in the morning is what continued and led to the bleeding in the afternoon, and that's why she had to have a hysterectomy, I can tell you based on the angiogram that that's wrong for two reasons. I can look at the angiogram, and in my expert opinion, I can walk you through it, which as Judge Wilkinson mentioned, there's something about live testimony that can be very compelling, especially when looking at a film of the actual procedure performed. I can tell you we can see the act of bleeding before the embolization is done, and then we can see that the act of bleeding was stopped by the embolization, and therefore the bleeding in the morning couldn't have been the cause of the bleeding in the afternoon. What was plaintiff's evidence on the point of causation? Plaintiff's testified that they... Maybe I'm asking the wrong person, but... My understanding of what plaintiff's theory is is that although the angiogram showed bleeding, so Dr. Duszak would have said the angiogram shows bleeding in the upper part of the uterus, which is far away from the site of the laceration. Plaintiff's theory was that it was bleeding from the laceration and not the bleeding in the upper uterus that actually ended up causing the bleeding that required the hysterectomy. How was the time apportioned between the trial time apportioned between the standard of care issue and the causation issue? I'm sorry. I'm not sure exactly how it was apportioned because my recollection... Was causation extensively discussed at Mustard Down? So my understanding is that sort of each expert who appeared talked about everything together, so it wasn't sort of that standard of care was talked about one day and that causation was talked about a different way. How much time was given to the plaintiff's case versus the government's case? I'm sorry. I'm sorry. I didn't actually look at the amount of time. What I can say is that it was a four-day trial. Dr. Duszak was already there, and what the government proffered is his testimony would probably take an additional three to four hours, so we're not talking about something that would have caused the trial to be extensively extended. And, again, he would have talked from a different perspective and been the only person qualified to testify to highly relevant evidence, especially where the district court acknowledges that this was a closed question. Could you put on some other evidence as to causation besides that of Dr. Duszak? So on causation he would have been the only person able to talk about the angiogram, which was important to the government's case. On the standard of care, yes. His new evidence would have been both his personal experience performing embolizations and his extensive knowledge of the current up-to-date medical literature. He was planning to talk about up to nine peer-reviewed articles that talked about, so both in their brief and today, Plaintiff's Council has said that whether or not an embolization is appropriate, their theory is that it depends on what caused the bleeding. And as the government proffered, and we've been discussing today, what Dr. Duszak would have testified to is it actually doesn't matter what the cause of bleeding is. We now understand that embolizations are appropriate not just for a tonic uterus, and so what happens is that the district court on standard of care said the government's other experts' theory that embolization was appropriate depended on the predicate that that expert had, that the plaintiff had on a tonic uterus in the morning. Now what Dr. Duszak would have added there is actually, in my expert opinion, based on my personal experience and extensive knowledge of up-to-date literature, both completely appropriate under Rule 702. And again, I do just want to stop myself really quickly to note that although Plaintiff talks a lot about Rule 702, the district court expressly rejected Plaintiff's 702 arguments, and that certainly wasn't an abuse of discretion because that's fully consistent with, for example, this court's decision in Pritchard which held that similarly to here, a radiologist who had said, look, I'm not a surgeon, I can't tell you exactly what the standard of care is for a surgeon, this court upheld the inclusion of that evidence on the ground that, you know, you don't have to hold sort of a non-lawyer to their testimony in a deposition, and that certainly in full context it was clear that that radiologist expert knew enough about when surgery was appropriate in those circumstances. And so to hear Dr. Dusak's testimony wouldn't have gone to what would have hypothetically happened if a surgery had been performed, but it would have directly impeached two central predicates of Plaintiff's theory of causation. And that's all the government as a defendant has to do here. We win either by convincing the district court we are absolutely right, or by the plaintiffs just didn't put on enough evidence to have a preponderance of the evidence here, and especially where the district court acknowledges that it was an exceedingly close question. And essentially the second opinion says, look, now that I've discounted the government's obstetrics expert, again, because the causation testimony of that expert in the district court's opinion depended on the plaintiff having an atonic uterus, the only credible person that I have now before me is the plaintiff expert. But if we had had Dr. Dusak to either be another credible expert for the, you know, either under the theory that Dr. Dusak, in light of Dr. Dusak's testimony, the government is sort of as affirmatively is the more credible story, or just by knocking out plaintiff's expert, either one of those might have been enough to change the case. We're not asking the court here to decide for sure. We don't know exactly what the district court was thinking. They were very sparse opinions. But what the government does have a right to is the opportunity to put on a full defense and let the district court weigh the evidence once it comes in. Thank you. Thank you. We'll come down and greet counsel and proceed directly into a second case.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Robert B. King